United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES K. SONG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AARON DRENBERG, et al., <br><br> Defendants. | Case No. 18-CV-06283-LHK <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: Dkt. No. 27 |

Plaintiffs James Song, FaircapX, Inc., Mithrandir Inc. ("Mithrandir Labs"), and Faircap Angels, Inc. (collectively, "Plaintiffs") bring suit against Defendants Aaron Drenberg, Alexa Pettinari, and Mark Pettinari (collectively, "Defendants") alleging multiple causes of action that originate from a soured business relationship. Before the Court is Defendant Drenberg's[1] motion to dismiss. ECF No. 27 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Drenberg's motion to dismiss.

**I.  BACKGROUND**

---

[1] Defendant Alexa Pettinari does not so move because she has not yet appeared in the instant case. In addition, Defendant Mark Pettinari does not so move because none of the causes of action the instant motion to dismiss seeks to dismiss are alleged against Mark Pettinari.

1
Case No. 18-CV-06283-LHK
ORDER GRANTING MOTION TO DISMISS

### A. Factual Background

As an initial matter, at times, Plaintiffs' first amended complaint refers to "Pettinari" without distinguishing between Defendant Alexa Pettinari or Defendant Mark Pettinari. *Compare* ECF No. 26 (first amended complaint, or "FAC") at ¶ 2 ("Drenberg and Pettinari both worked for Mithrandir Labs"), *with id.* at ¶ 60 ("As such, the Plaintiffs are entitled to presumed damages as a result of the actions of Drenberg and Ms. Pettinari."). At the January 16, 2019 case management conference, Mark Pettinari, attorney for Alexa Pettinari's co-defendant, Aaron Drenberg, stated that he is Alexa Pettinari's father.

The "court may also consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense to assess whether the Third Amended Complaint plausibly suggests an entitlement to relief, as required under *Iqbal*." *Cole v. Sunnyvale*, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010). Thus, in distinguishing the alleged actions of Mark Pettinari and Alexa Pettinari, the Court relies on the original complaint, ECF No. 1, which does not name Mark Pettinari as a defendant. Moreover, the instant order refers to the Pettinaris by their first names to distinguish Alexa Pettinari from her co-defendant Mark Pettinari.

Defendants Drenberg and Alexa were employees of Plaintiff Mithrandir Labs, "a startup education and technology firm, in Myanmar and Thailand, along with its founder, [Plaintiff] James Song."[2] FAC at ¶ 2. Drenberg and Alexa allegedly knew that they were expected to work long hours and "stay focused on the company's mission, as is the case with most startups." However, Drenberg and Alexa allegedly both failed to demonstrate the "required work ethic and seriousness of purpose required by" Song. *Id.* at ¶ 5. The FAC alleges that when Song confronted Drenberg and Alexa about Drenberg and Alexa's work ethic, Drenberg and Alexa conspired against Song, feigning illness and lying to Song about their whereabouts as excuses as to why Drenberg and Alexa were unable to work. *Id.* at ¶ 6. The FAC alleges that Drenberg and Alexa "ceased working with the Plaintiffs no later than July 2017." *Id.* at ¶ 65. However, after "several

---

[2] The FAC fails to disclose many of the relevant dates and times relevant to the interactions between Plaintiffs and Defendants, so the sequence of events is unclear.

2
Case No. 18-CV-06283-LHK
ORDER GRANTING MOTION TO DISMISS

weeks of trying to get a straight answer from [Alexa] regarding her whereabouts and intentions, Mr. Song took control of all company accounts and computers, including the company laptop that [Alexa] used prior to her disengagement, and insisted that [Alexa] turn over all company passwords and other account access information." *Id.* at ¶ 66. Song also alleges that weeks after Alexa left the company and ceased communications with Song, Alexa "unlawfully accessed Mr. Song's apartment in Thailand, and therein unlawfully accessed the company laptop that she had previously used." *Id.* at ¶ 67. Song alleges that upon information and belief, Alexa copied all the documents stored on the laptop and then deleted all the versions of those documents from the laptop. *Id.* at ¶ 69. "At approximately the same time, the Defendants stole or somehow acquired James Song's mobile phone, which was a company phone but which also contained personal information and files, including photographs." *Id.* at ¶ 70. Drenberg and Alexa also allegedly contacted employees, contractors, partners, and investors to defame Song and Song's companies. *Id.* at ¶ 8.

On or about October 23, 2017, when Song asked Alexa to return "hundreds of thousands of dollars of company property that had been kept by [Alexa] for several months after her unprofessional departure," Drenberg and Alexa allegedly retaliated by posting a "viciously defamatory post on Reddit about James Song and his companies, which included links to several files they had stolen off of Mr. Song's phone, as well as personal information and photographs." *Id.* at ¶ 9, 29. The Reddit post also revealed "private communications, personal information, and intimate details regarding Mr. Song's former girlfriend and business partner, including sufficient information to identify her, without her prior knowledge or permission." *Id.* at ¶ 9. The Reddit post was removed after one week and the Reddit account was terminated because according to Plaintiffs, the "defamatory, harassing and personally violative nature of the post was so obvious to any reasonable reader." *Id.* at ¶ 10.

Moreover, the FAC alleges that at the time of Drenberg and Alexa's allegedly "tortious acts," the Plaintiffs had established "many valuable relationships." *Id.* at ¶ 92. For instance, Song was recognized as a World Economic Forum Young Global Leader and as a UBS Global

3

Visionary. *Id.* Specifically, Plaintiffs allege that as a result of Drenberg and Alexa's actions, "the Plaintiffs have suffered several million dollars in losses" because Song's status as a World Economic Forum Young Global Visionary and UBS Global Visionary were both suspended, and Song's invitation to the World Economic Forum's annual Davos conference was withdrawn, "cutting off his access to substantial capital and invaluable business opportunities." *Id.* at ¶ 15.

**B. Procedural History**

On October 12, 2018, Plaintiffs filed suit against Drenberg and Alexa. ECF No. 1. On January 14, 2019, Drenberg—the only defendant who had appeared in the instant case—filed a motion to dismiss. ECF No. 16. On February 12, 2019, Plaintiffs filed an opposition to the motion to dismiss. ECF No. 22.

However, on February 20, 2019, in violation of this Court's January 16, 2019 case management order setting the last day to amend the pleadings or add parties as February 15, 2019, ECF No. 19, Plaintiffs—without leave of the Court or stipulation from the parties—unilaterally filed a FAC, ECF No. 26. The FAC's factual allegations do not differ much from the original complaint. However, the FAC added attorney Mark Pettinari, counsel for Drenberg, as a new Defendant and added tortious interference with prospective business relations as a new cause of action. FAC at ¶¶ 24, 91-96.

On March 6, 2019, Defendant Drenberg filed the instant motion to dismiss. ECF No. 27 ("Mot."). The instant motion to dismiss assumed that the FAC was now the operative complaint, and argued for the dismissal of several causes of action. *See, e.g.*, Mot. at 1-2 ("Defendant AARON DRENBERG . . . will present his Motion to Dismiss the *First Amended Complaint*, specifically, the Second, Fourth, and Fifth Causes of Action set forth in the *First Amended Complaint*" (emphasis added).). On March 20, 2019, Plaintiffs timely served Defendants with an opposition brief to the instant motion to dismiss, but Plaintiffs erroneously failed to file the opposition on the Court's docket. ECF No. 32 at 2. Nevertheless, on March 27, 2019, Drenberg's counsel correctly filed and served a reply brief in response to "Plaintiffs' Opposition that . . . was served [on Drenberg] . . . on March 20, 2019." ECF No. 28 ("Reply") at 1. It was not until April

4

1    26, 2019 that Plaintiffs filed their opposition on the Court's docket. ECF No. 31 ("Opp."). On April 29, 2019, the Court ordered Defendants to confirm "whether Plaintiffs' April 26, 2019 opposition to the [instant motion to dismiss] is identical to the version Plaintiffs timely served on Defendants on March 20, 2019." ECF No. 32 at 2. On April 30, 2019, Defendants confirmed that Plaintiffs' opposition filed on the Court's docket is identical to the version served on the Defendants on March 20, 2019. ECF No. 33 at 1-2.

Given the fact that Plaintiffs timely served Drenberg on March 20, 2019 with the same opposition brief as the one filed on the Court's docket on April 26, 2019, the Court will consider Plaintiffs' opposition brief for the purposes of the instant order. Although Plaintiffs' opposition is technically untimely, the Court makes a one-time exception in light of the fact that the opposition was timely served on Drenberg, and that the version served on Drenberg is the same version filed on the Court's docket on April 26, 2019. Moreover, Drenberg relied upon Plaintiffs' opposition in crafting Drenberg's March 27, 2019 reply brief.

Furthermore, even though the FAC was filed in contravention of this Court's scheduling order, ECF No. 19, because the Defendants treated the FAC as timely, drafted the instant motion to dismiss the FAC, and never objected to the untimely filing of the FAC, per the Court's April 29, 2019 order, "Defendants have now waived any objection to the untimely filing of the FAC." ECF No. 32 at 1. Thus, the Court will do the same and treat the FAC as the operative complaint in the instant case. Therefore, the Court DENIES as moot Drenberg's January 14, 2019 motion to dismiss the original complaint. ECF No. 16.

## II.  LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

6

1  amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

2  moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

3  (9th Cir. 2008).

**III. DISCUSSION**

Plaintiffs assert 5 causes of action: (1) defamation against Drenberg and Alexa; (2) violation of the Computer Fraud and Abuse Act ("CFAA") against Drenberg and Alexa; (3) fraudulent Digital Millennium Copyright Action takedown notice against Drenberg and Mark; (4) copyright infringement against Drenberg and Alexa; and (5) tortious interference with prospective business relationships against Drenberg and Alexa. FAC at ¶¶ 28-96.

However, Drenberg's motion to dismiss only challenges counts 2 (violation of the CFAA), 4 (copyright infringement), and 5 (tortious interference with prospective business relationships). The Court addresses each challenged cause of action in turn. Finally, the Court addresses the FAC's failure to distinguish Alexa Pettinari from Mark Pettinari.

**A. Violation of the Computer Fraud and Abuse Act (Count 2)**

Drenberg argues that Plaintiffs failed to plead with any particularity a Computer Fraud and Abuse Act ("CFAA") cause of action because Plaintiffs failed to identify exactly which part of the statute, which contains multiple potential causes of action, Drenberg is alleged to have violated. Mot. at 4. Plaintiffs argue that in the FAC, Plaintiffs did not allege any "intent to defraud" or that the Defendants furthered a "fraud." Opp. at 2. Thus, Plaintiffs claim that the "CFAA cause of action in the [first amended] Complaint neatly and fully tracks all of the essential elements of . . . CFAA claims." *Id.* The Court finds Drenberg's argument more persuasive.

"The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009) (citing 18 U.S.C. §§ 1030(a)(1)-(7)).

18 U.S.C. §§ 1030(a)(1)-(7) is comprised of many parts and subparts, all of which are

7
Case No. 18-CV-06283-LHK
ORDER GRANTING MOTION TO DISMISS

defined to give rise to liability under the CFAA in different ways and which have different pleading requirements. For instance, 18 U.S.C. § 1030(a)(2) renders liable anyone who:

> intentionally access a computer without authorization or exceeds authorized access, and thereby obtains—
>
> (A) information contained in a financial record of a financial institution . . .
>
> (B) information from any department or agency of the United States; or
>
> (C) information from any protected computer. . . .

Also, 18 U.S.C. § 1030(a)(4) renders liable anyone who:

> knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . .

Likewise, 18 U.S.C. § 1030(a)(5) renders liable anyone who:

> (A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization to a protected computer;
>
> (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or
>
> (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

Moreover, 18 U.S.C. § 1030(a)(6) renders liable anyone who:

> knowingly and with the intent to defraud traffics . . . in any password or similar information through which a computer may be accessed without authorization, if—
>
> (A) such trafficking affects interstate or foreign commerce; or
>
> (B) such computer is used by or for the Government of the United States . . . .

Plaintiffs fail to identify whether any particular section of the CFAA is implicated by Drenberg's alleged violation of the CFAA. Indeed, Drenberg notes that a "a simple review of subsection (a) of Section 1030 reveals there are twelve distinct causes of action that could be brought in a civil action and subsection (b) provides a thirteenth distinct cause of action by

8

proscribing conspiracy." Because each CFAA cause of action must also "involve at least one of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)," Drenberg roughly calculates that "there are a total of 65 different statutory provisions that could give rise to a civil action under Section 1030." Reply at 2-3.

Indeed, the FAC is silent as to which subsections of the CFAA Drenberg is alleged to have violated. Only in Plaintiffs' *opposition* do Plaintiffs identify 18 U.S.C. § 1030(a)(2) and 18 U.S.C. § 1030(a)(4) as the CFAA provisions that Drenberg violated. Opp. at 2. Plaintiffs' belated attempt to identify which subsections of the CFAA Drenberg violated is impermissible. "[T]he complaint may not be amended by briefs in opposition to a motion to dismiss." *Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *16 (N.D. Cal. Dec. 5, 2017) (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010)); *see also Merritt v. Metro. Life Ins. Co.*, 2010 WL 725073, at *1 (N.D. Cal. Mar. 1, 2010) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Moreover, Plaintiffs claim that these two CFAA subsections "neatly and fully tracks [sic] all of the essential elements of a cause of action." *Id.* However, Plaintiffs also note that the FAC does not allege an "'intent to defraud' or that the Defendants furthered a 'fraud' against the Plaintiffs." *Id.* Yet, one of the two CFAA subsections Plaintiffs identify in their opposition, 18 U.S.C. § 1030(a)(4), requires a showing of "intent to defraud." Thus, Plaintiffs have failed to state an 18 U.S.C. § 1030(a)(4) claim.

Plaintiffs' FAC does not meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements, which require, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Indeed, courts have found as insufficient pleadings that fail to specify which part of a multi-part statute Defendants have allegedly violated. For instance, in *Hansen*, the Ninth Circuit affirmed the dismissal of the plaintiff's claims because the plaintiff's "complaint fail[ed] to specify the particular statutes and regulations" alleged to be unconstitutional. *Hansen v. Department of Treasury*, 528 F.3d 597, 603 (9th Cir. 2007). Ultimately, *Hanson* found that the plaintiff failed "to state a claim upon which relief can be granted." *Id.*; *see also Doe v. Walmart*

9

Case No. 18-CV-06283-LHK
ORDER GRANTING MOTION TO DISMISS

*Inc.*, 2019 WL 499754, at *10 (N.D. Cal. Feb. 8, 2019) ("There are 4 possible variants of a RICO claim. . . . Plaintiffs have not pleaded which subsection of the RICO statute the Defendants are accused of violating. . . . Plaintiffs' pleadings are therefore inadequate"); *Diamond S.J. Enterps, Inc. v. City of San Jose*, 2018 WL 5619746, at *5 (N.D. Cal. Oct. 29, 2018) ("Plaintiff fails to identify the *exact* code provisions alleged to violate the First Amendment. . . . Thus, it is far too onerous to require the [defendant] to 'determine what claims and allegations must be defended or otherwise litigated,' because the [defendant] cannot tell which particular code sections are alleged to violate the First Amendment (quoting *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011))); *Lesnik v. Eisenmann SE*, 2018 WL 4700342, at *12 (N.D. Cal. Oct. 1, 2018) ("It is incumbent on Plaintiffs to identify the statutes and theories under which they proceed, so that the Court can evaluate the legal sufficiency of Plaintiffs' claims. Plaintiffs have failed to do so, and Plaintiffs may not rewrite the [second amended complaint] in their opposition by inserting a string of new statutes absent from the [second amended complaint].").

In sum, allegations must put defendants "on sufficient notice of the particular misconduct alleged to permit [defendants] to prepare a defense to Plaintiffs' claims." *Eidson v. Medtronic, Inc.*, 40 F. Supp. 3d 1202, 1236 (N.D. Cal. 2014). As noted above, the various subsections of the CFAA statute have different pleading requirements, so without knowing which subsection or subsections Plaintiffs claim Defendants have violated, Drenberg has not been put on notice of what he must defendant against.

Thus, the Court GRANTS the motion to dismiss the Computer Fraud and Abuse Act claim (count 2). Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Drenberg, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### B. Copyright Infringement (Count 4)

Drenberg argues that Plaintiffs' copyright infringement argument fails because Plaintiffs have failed to register any copyrightable works with the United States Copyright Office. Mot. at 5. Plaintiffs concede that the works have not been registered with the United States Copyright Office

10

Case No. 18-CV-06283-LHK
ORDER GRANTING MOTION TO DISMISS

but argue that "the Defendants' theft of the only copies of the Plaintiffs' original works has prevented the Plaintiffs from registering those works." Opp. at 3. The Court finds Drenberg's arguments more persuasive.

17 U.S.C. § 411(a) states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." In other words, "[t]hough an owner has property rights without registration, he needs to register the copyright to sue for infringement." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 678 (9th Cir. 2014). The Court has not found, and the Plaintiffs fail to identify, any authority for the proposition that there is an exception to this registration requirement if a defendant is allegedly in possession of the sole copy of the work.

Thus, the Court GRANTS the motion to dismiss the copyright infringement claim (count 4). Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Drenberg, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

**C. Tortious Interference with Prospective Business Relations (Count 5)**

Drenberg argues that Plaintiffs have failed to identify an actual prospective business relationship between Plaintiffs and any third party. Mot. at 6. Plaintiffs respond by arguing that Song's relationships with the World Economic Forum's Young Global Leader program and the UBS Global Visionary program were "suspended" as a result of Drenberg and Alexa's interference, and as a result, Song could no longer access investment opportunities. Opp. at 3. The Court finds Drenberg's arguments more persuasive.

Tortious interference with prospective business relations is also known under California law—which both parties apply to this claim, Mot. at 6, Opp. at 3—as intentional interference with prospective economic advantage. *Newcal Indus., Inc. v. IKON Office Solns., Inc.*, 2011 WL 1899404, at *6 (N.D. Cal. May 19, 2011). To state a claim for the tortious interference with prospective business relations, the plaintiff must plead: "(1) an economic relationship between the

11
Case No. 18-CV-06283-LHK
ORDER GRANTING MOTION TO DISMISS

plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

Regarding the first prong of the *Korea Supply* test, a "[p]laintiff must establish an actual economic relationship or a protected expectancy with a third person, not merely a hope of future transactions." *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998) (citing *Bank v. Kirwan*, 39 Cal. 3d 311, 330 (1985)). "To show an economic relationship, the cases generally agree that it must be reasonably probable the prospective economic advantage would have been realized but for defendant's interference." *Cal. Expanded Metal Prods. Co. v. ClarkWestern Dietrich Bldg. Sys., LLC*, 2014 WL 5475214, at *4 (C.D. Cal. Oct. 29, 2014) (quoting *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2014 WL 524076, at *14 (N.D. Cal. Feb. 14, 2014)).

At bottom, Plaintiffs' claim here revolves around Song's "[l]oss of his relationships with the World Economic Forum and UBS," which form the basis of Song's claim that an economic relationship existed between Song and prospective investors in Song's businesses. FAC at ¶ 95. However, courts have held that this type of relationship is not enough to state a claim for tortious interference with prospective business relationships. For instance, courts have dismissed a tortious interference claim because the complaint failed to allege that the plaintiffs "lost a contract . . . or that a negotiation with a Customer failed." *See, e.g.*, *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). Here, Song alleges that his status as a World Economic Forum Young Global Visionary and UBS Global Visionary were suspended as a result of Drenberg's actions, but Song recognizes that being designated as a World Economic Forum Young Global Visionary and UBS Global Visionary, by themselves, do not constitute a prospective business relationship. Instead, Song alleges that *opportunities* that might have arisen as a result of Song's status as a World Economic Forum Young Global Visionary and UBS Global Visionary were

12

affected by Drenberg's alleged tortious interference. FAC at ¶ 15 ("Mr. Song's invitation to the World Economic Forum's annual Davos conference was withdrawn, cutting of his access to substantial capital and invaluable business opportunities."). Thus, Plaintiffs' FAC demonstrates that Song's relationships with the World Economic Forum Young Global Visionary and UBS Global Visionary programs do not constitute "an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff." *Korea Supply Co.*, 29 Cal. 4th at 1153 (2003). This is because Plaintiffs impermissibly rest their tortious interference claim on "a hope of future transactions," which courts have held to be insufficient to support a claim of tortious interference. *Brown*, 17 F. Supp. 2d at 1140 (citing *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985)).

In fact, the FAC fails to name a single entity or person with whom Plaintiffs might have had a prospective business relationship with which Drenberg tortuously interfered. Instead, the FAC merely makes sweeping generalizations lacking any detail about the loss of prospective business opportunities. FAC at ¶ 95 ("The Plaintiffs have lost many valuable business relationships as a direct and predictable result of Mr. Drenberg's and Ms. Pettinari's actions . . . ."). Per *Brown*, this is insufficient to state a claim for tortious interference with prospective business relations.

*California Expanded Metal Products* sheds more light on the extensiveness of the requisite economic relationship needed to adequately plead a tortious interference claim. In *California Expanded Metal Products*, two companies were engaged in licensing negotiations. 2014 WL 5475214, at *4. However, there were allegations that a third company's false representations disrupted the licensing negotiations. *Id.* at *3. Notwithstanding the third company's alleged interference, the two companies actually engaged in exploratory discussions regarding the licensing agreement. The *California Expanded Metal Products* court held that the "exploratory discussions alleged are insufficient, on their own, to establish [with] any certainty that an agreement would have been reached." *Id.* at *4. The *California Expanded Metal Products* court's pronouncement was made despite the fact that the two companies were actively engaged in

13
Case No. 18-CV-06283-LHK
ORDER GRANTING MOTION TO DISMISS

licensing discussions, and eventually executed a licensing agreement two years later. *Id.*

Here, Plaintiffs merely allege interference with *possible* business contacts generated through Song's participation in the World Economic Forum Young Global Visionary and UBS Global Visionary programs. Plaintiffs fail to point to any particular company or opportunity that was disrupted as a result of Drenberg's allegedly tortious actions. As the *California Expanded Metal Products* decision found, even in a situation where companies were actively engaging in business negotiations, that is not enough to show that it was "reasonably probable the prospective economic advantage would have been realized but for defendant's interference." *Id.* Thus, even assuming Song was allowed to participate at, for instance, the World Economic Forum's annual Davos conference, Plaintiffs' would still fail to demonstrate that his participation was anything more than a "hope of future transactions." *Brown*, 17 F. Supp. 2d at 1140.

Therefore, the Court GRANTS the motion to dismiss the tortious interference with prospective business relations claim (count 5). Because granting Plaintiffs an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Drenberg, and Plaintiffs have not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

### D. Plaintiffs' Failure to Distinguish Alexa Pettinari and Mark Pettinari

At times, Plaintiffs' FAC refers to "Pettinari" without distinguishing between Defendant Alexa Pettinari or Defendant Mark Pettinari. *Compare* FAC at ¶ 2 ("Drenberg and Pettinari both worked for Mithrandir Labs"), *with id.* at ¶ 60 ("As such, the Plaintiffs are entitled to presumed damages as a result of the actions of Drenberg and Ms. Pettinari."). At the January 16, 2019 case management conference, Mark Pettinari, attorney for Alexa Pettinari's co-defendant, Aaron Drenberg, stated that he is Alexa Pettinari's father.

According to *Iqbal*, to survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face. 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Here, because Plaintiffs' FAC generally fails to

14

distinguish between Alexa and Mark Pettinari, the FAC lacks facial plausibility to allow for the inference that either Alexa or Mark Pettinari is liable for any alleged misconduct. The FAC has failed to put Alexa and Mark Pettinari on notice that their individual conduct gave rise to a cause of action. Thus, under *Iqbal*, the fact that the FAC fails to distinguish between Alexa and Mark Pettinari alone is enough to dismiss the FAC's causes of action as to them.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Drenberg's motion to dismiss: the Computer Fraud and Abuse Act claim (count 2); the copyright infringement claim (count 4); and the tortious interference with prospective business relations claim (count 5).

Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within 30 days. Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified in this Order or in Drenberg's brief will result in dismissal with prejudice of the claims dismissed in this Order. Plaintiff may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: May 6, 2019

_Lucy H. Koh_
LUCY H. KOH
United States District Judge