UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES K. SONG, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AARON DRENBERG,<br><br>Defendant. | Case No. 18-cv-06283-LHK (VKD)<br><br>**ORDER RE DISCOVERY DISPUTE RE PLAINTIFF SONG'S RESPONSES TO DEFENDANT'S DOCUMENT REQUESTS**<br><br>Re: Dkt. Nos. 65, 66, 68, 69 |

In this action, plaintiff James Song and four others assert claims against defendant Aaron Drenberg for defamation, violation of the Computer Fraud and Abuse Act, and fraud with respect to a Digital Millennium Copyright Act takedown notice.[1] Dkt. No. 46. The parties ask the Court to resolve several discovery disputes relating to document production. First, Mr. Drenberg contends Mr. Song has failed to comply with his obligations to respond in writing to Mr. Drenberg's first and second sets of requests for production of documents and with this Court's prior orders regarding responses to the first set of requests for production of documents. Dkt. Nos. 65, 66. Second, Mr. Drenberg contends that Mr. Song has not complied with his document production obligations with respect to both sets of requests. Dkt. Nos. 68, 69.

For the following reasons, the Court grants in part and denies in part Mr. Drenberg's motion to compel.

**I.     MR. DRENBERG'S FIRST SET OF DOCUMENT REQUESTS TO MR. SONG**

Mr. Drenberg served his first set of requests for production of documents on Mr. Song on

---

[1] Defendants Alexa Pettinari and Mark Pettinari have been dismissed. Dkt. Nos. 62, 64.

February 21, 2019. Dkt. No. 30 at 1. On May 2, 2019, in response to a prior discovery dispute about these requests, the Court found that Mr. Song had failed to timely respond to the requests and had waived all objections, save those based on the attorney-client privilege or the attorney work product protection. The Court ordered, in part, as follows:

> [Mr. Song] must serve written responses that comply with Rule 34(b)(2) no later than May 10, 2019. Mr. Song must at least begin producing responsive documents no later than May 10, 2019, and he must specify a time by which his production will be complete, if not by that date. *See* Fed. R. Civ. P. 34(b)(2)(B).

Dkt. No. 35 at 4. Mr. Song did not comply with this order. Specifically, his discovery responses did not comply with the requirements of Rule 34 and this Court's local rules, and he failed to begin production of documents on May 10, 2019 as ordered. *See* Dkt. No. 48 at 3–5. On June 19, 2019, the Court ordered, in part, as follows:

> 1. Mr. Song has waived and may not rely on any objections to the production of documents responsive to Mr. Drenberg's document requests, with the exception of objections based on the attorney-client privilege and the attorney work product doctrine.
>
> 2. No later than July 3, 2019, Mr. Song must serve amended responses to Mr. Drenberg's document requests in a form that complies with Rule 34(b) and Civil Local Rule 34-1. Such responses must affirmatively state whether responsive documents exist and must specifically state the form in which any such responsive documents will be produced or made available for inspection.
>
> . . .
>
> 4. Mr. Song must produce all responsive documents, except those as to which a claim of privilege has been asserted as described in paragraph 3, no later than July 8, 2019. If a claim of privilege is made as to a portion of a document but not the entirety of a document, the document shall be produced with the privileged portion redacted.

Dkt. No. 48 at 5.

Mr. Song served amended responses to Mr. Drenberg's first set of document requests on July 3, 2019. Dkt. No. 65 at 2, Ex. A. Mr. Drenberg complains that Mr. Song's responses do not comply with the Court's prior orders in several respects and that Mr. Song has not adequately complied with his obligations to produce responsive documents. Mr. Song responds that his written responses comply with the requirements of Rule 34, the Court's local rules, and this

1  Court's orders, and that he has produced all responsive documents as they are kept in the ordinary
2  course of business. The Court will address separately each issue raised in the parties' joint
3  submissions.

### A. Mr. Song's Responses to the Document Requests

Mr. Drenberg says that Mr. Song relies on one of two boilerplate responses for all requests: one boilerplate response recites that Mr. Song has "responsive non-privileged documents" that will be produced, and the other says he has "no responsive non-privileged documents." With few exceptions, Mr. Song does not assert any privilege claims in response to Mr. Drenberg's document requests. Mr. Drenberg argues that it is impossible to tell whether Mr. Song is withholding any responsive documents based on privilege, or whether for some requests he has no documents (privileged or non-privileged) that are responsive to the requests. Dkt. No. 65 at 2–4. In addition, Mr. Drenberg says that Mr. Song's responses suggest that he is relying impermissibly on objections that each request is vague, ambiguous, or unintelligible because he qualifies his response to each request with the phrase "based on plaintiff's good-faith understanding of this request" without explaining what that understanding is. *Id.* at 4.

Mr. Song responds that he need only provide a separate response to each request for production, state affirmatively whether responsive documents exist, and state the form in which responsive documents will be produced. *Id.* at 5. He argues that he has no obligation to identify any claims of privilege in response to each document request, so long as he provides a separate privilege log. *Id.* at 5–6.

Mr. Song misapprehends his obligations under Rule 34 and this Court's prior orders. It is not sufficient for him to merely respond to each request. His response must fairly address what each request calls for and state whether the scope of his production will be limited in some respect, including by a claim of privilege. *See* Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."); Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit

3

1    inspection of the rest."). Mr. Song has not complied with these requirements. He does not specify
2    whether there are any documents responsive to a particular request that he is withholding on
3    grounds of privilege, and such specificity is required. His request-specific responses need not list
4    every document withheld on privilege grounds; a document-specific privilege log may be provided
5    separately. But he must at least make clear whether he is withholding documents within the scope
6    of the request on grounds of privilege. Mr. Song's failure to do so, after the Court specifically
7    ordered his compliance with the Rules and admonished him for his prior failure to comply, invites
8    a finding of waiver. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408
9    F.3d 1142, 1149 (9th Cir. 2005) (discussing factors to be considered when evaluating waiver of
10   privilege); Dkt. No. 48 at 4 ("Given Mr. Song's utter failure to comply with the requirements of
11   Rule 26 and this Court's prior order, the factors set forth in *Burlington* strongly favor a finding
12   that all privileges have been waived. In the exercise of its discretion, the Court will afford Mr.
13   Song *one last opportunity* to properly assert his privilege claims . . . .") (emphasis original). The
14   Court concludes that Mr. Song has waived any claims of attorney-client privilege or attorney work
15   product protection, subject only to the limited opportunity to amend his privilege log that the
16   Court permits in its separate order addressing the parties' dispute regarding Mr. Song's privilege
17   log. *See* Dkt. Nos. 67, 85.

18   The parties' dispute regarding Mr. Song's reference to his "good-faith understanding" of
19   each of Mr. Drenberg's document requests is more difficult to resolve. For some of Mr.
20   Drenberg's document requests, the scope of the request may not be subject to any reasonable
21   dispute, and Mr. Song's reliance on this phrase in responding to such requests is improper,
22   particularly as he has waived his objections on grounds like overbreadth. Dkt. No. 48 at 4. For
23   most other requests, however, the scope of the request is not precise, and Mr. Song might well be
24   in the position of making a judgment about what documents are responsive, regardless of his
25   waiver of objections.[2] Accordingly, if Mr. Song cannot make an unqualified representation that

---

[2] Almost all of Mr. Drenberg's requests ask for "all documents referring or relating to . . ." Such a formulation invites dispute and is generally disfavored precisely because the boundaries of the request are difficult to identify. *See, e.g.*, *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) (discussing requests phrased as "all documents" or "all emails" as overbroad,

4

all documents responsive to a particular request will be produced, he *must* specify the scope of the production he commits to make, as Rule 34 requires. He may not rely on a "good-faith understanding" of the scope of a request without explaining what that understanding is.

By **October 21, 2019**, Mr. Song must serve amended responses that are either unqualified or explain the scope of the production he agrees to make with respect to each document request. If Mr. Song has withheld from production any responsive documents on the ground that the documents are privileged, he must produce those documents by **October 21, 2019**, except that he may continue to withhold those documents within the scope of the privilege log entries for which the Court has provided a limited opportunity to amend, until further order of the Court. *See* Dkt. No. 85. Per the Court's separate order, Mr. Song may withhold from production the documents and communications corresponding to entries 8-15 in his privilege log, for which the Court has sustained his work product claim. *See id.*

### B. Existence and Location of Documents

Mr. Drenberg contends that Mr. Song has an obligation to identify any responsive documents of which he is aware, including their location and custodian, even if those documents are not in his possession, custody, or control, because an instruction in Mr. Drenberg's document requests calls for that information. Dkt. No. 65 at 6. Mr. Song does not respond to this argument.

The Court denies Mr. Drenberg's motion to compel this information. He does not cite to any rule or authority that requires Mr. Song to provide information about the existence and location of documents outside of Mr. Song's possession, custody, or control, and such a demand (even if not objected to) is unreasonable as applied to the 125 requests in Mr. Drenberg's first set of document requests. The Court will not order it.

### C. Document Requests Nos. 100 and 101

Mr. Drenberg moves to compel the production of documents responsive to Requests Nos.

---

potentially burdensome and costly, and potentially non-compliant with Rule 34(b)(1)(A)'s requirement to state requests with "reasonable particularity"); Manual for Complex Litigation, Fourth, § 11.443 (2004) ("In overseeing document production, the court should . . . prevent indiscriminate, overly broad, or unduly burdensome demands–in general, forbid sweeping requests, such as those for 'all documents relating or referring to' an issue, party or claim . . . .").

5

100 and 101, reproduced below:

> Request No. 100: All documents related or referring to or reflecting the following statement made in Paragraph 39 of the Complaint in this action, filed on October 12, 2018: "Over the next few months, Mr. Song's former girlfriend continued to post photos and describe events that depicted her time in Thailand and Myanmar with Mr. Song, including several photos that Mr. Song had taken of her."
>
> Request No. 101: All documents reflecting the photographs referred to in Paragraph 39 of the Complaint in this action, filed October 12, 2018.

Dkt. No. 65, Ex. A at 26–27. Mr. Song objects to each request on the ground that all responsive documents "were collected solely in anticipation of litigation and are therefore . . . subject to protection under the work product doctrine." *Id.* Mr. Drenberg argues that Mr. Song has waived his attorney work product objection for documents responsive to these requests because the documents are specifically cited and relied upon in each of Mr. Song's complaints in this action. Dkt. No. 65 at 4–5. Mr. Song responds that "the documents requested were collected by Mr. Song and his counsel in anticipation of this litigation and in preparation for trial, not in the ordinary course of business, and are therefore protected by the work-product doctrine." *Id.* at 7.

The attorney work product doctrine protects from disclosure documents "that are prepared in anticipation of litigation or for trial by or for" a party or its representative, unless the party seeking disclosure shows that it has a substantial need for the materials and cannot obtain equivalent materials without undue hardship. Fed. R. Civ. P. 26(b)(3). In particular, the doctrine provides qualified protection against discovery of the legal strategies and mental impressions of a party's counsel. *Hickman v. Taylor*, 329 U.S. 495, 508–10 (1947); *Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981). It does not protect facts from disclosure, unless disclosure of those facts would inherently reveal an attorney's strategies or mental impressions. *See, e.g.*, *O'Toole v. City of Antioch*, No. 11 CV 01502 PJH MEJ, 2015 WL 1848134, at *3 (N.D. Cal. Apr. 14, 2015); *Hamilton v. RadioShack Corp.*, No. C 11-00888 LB, 2012 WL 2327191, at *4–5 (N.D. Cal. June 18, 2012). Mr. Song bears the burden of showing that the documents at issue qualify for attorney work product protection. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

Requests Nos. 100 and 101 encompass documents that do not qualify for attorney work product protection because they constitute the underlying evidence on which Mr. Song relies in his three complaints. This material cannot be shielded from production simply because it was provided to counsel. Accordingly, Mr. Song must produce the photos and event descriptions Mr. Song's former girlfriend posted that show or describe her time in Thailand and Myanmar with Mr. Song, to which Mr. Song refers in paragraph 39 in each of his three complaints. Dkt. No. 1 ¶ 39; Dkt. No. 26 ¶ 39; Dkt. No. 46 ¶ 39. Request No. 100 is not limited to these photos and descriptions, but encompasses "[*a*]*ll documents related or referring to or reflecting* the . . . statement made in Paragraph 39 of the Complaint in this action, filed on October 12, 2018 . . . ." The scope of this request could well include documents that qualify for attorney work product protection. However, Mr. Song has made no showing whatsoever on this point. He relies on the assertion that responsive documents were "collected in anticipation of this litigation and in preparation for trial." But the purpose for which evidence was collected does not shield it from production. Without more, Mr. Song cannot sustain his burden with respect to his claim of work product protection.

By **October 21, 2019**, Mr. Song must produce all documents responsive to Requests Nos. 100 and 101, including any documents withheld as attorney work product.

### D. Mr. Song's Document Production

Mr. Drenberg contends that Mr. Song has failed to complete his production of responsive documents as the Court previously ordered. Dkt. No. 68 at 3-4. Specifically, Mr. Drenberg argues that Mr. Song's production is missing or incomplete with respect to Requests Nos. 1, 3-8, 11, 14, 17, 20-24, 26-27, 29-32, 36, 38-39, 41, 45-47, 52-53, 59-65, 68, 70, 85-89, 92-94, 99, 102, 108-110, 113, 116-118, and 121. *Id.* In addition, Mr. Drenberg says that it is difficult to use or evaluate the documents Mr. Song has produced because of the manner in which he produced them, which Mr. Drenberg describes as follows:

> Over 300 pages of documents produced by Mr. Song are grouped together within two large PDF files, number 138 pages and 198 pages respectively. These large PDF files contain unrelated documents from different persons and different sources. Many of the documents contained within these large PDF files are

> intentionally shuffled. As just one example, seven pages containing text messages reflecting a single communication between Angela Moran and Alexa Pettinari are randomly shuffled throughout the 198-page PDF file. . . . Other single communications within these large PDF files have been similarly split up and shuffled. The majority of Mr. Song's production is intentionally out of order.

*Id.* at 2. Mr. Drenberg also complains that the production contains many duplicates and mislabeled documents. *Id.* at 3. Finally, Mr. Drenberg complains that some of the screenshots in Mr. Song's production are unreadable. *Id.* at 4.

Mr. Song does not respond to Mr. Drenberg's complaints about the completeness of his production with respect to any particular document request, but he responds generally that if Mr. Song indicated in his written responses that he has responsive documents, he has produced them. *Id.* at 5. Mr. Song does not dispute Mr. Drenberg's statement that he has produced documents in two large PDFs of 138 pages and 198 pages, respectively, with the pages of some documents strewn throughout the PDF. He denies that he intentionally shuffled responsive documents and insists that he produced the documents in the order in which they are kept in the ordinary course of business. *Id.* at 4. Mr. Song also says that Mr. Drenberg's requests call for the production of duplicates, and so he has produced them. *Id.* at 5. Finally, Mr. Song suggests that if any screenshots in his production are difficult to read it is because the screenshots he has are difficult to read, and he has no obligation to create new ones. *Id.*

As explained above, Mr. Song has not clearly stated for most of Mr. Drenberg's document requests what the scope of his production is and whether any responsive documents have been withheld. For this reason, it is difficult for the Court to assess—let alone resolve—the parties' dispute about whether Mr. Song's production is complete. However, at a minimum, it is clear that Mr. Song has not produced documents in the manner Rule 34 requires, and this deficiency must be remedied.

All of Mr. Song's responsive documents are in the form of electronically stored information ("ESI"). With respect to ESI, if a request for production of documents does not specify the form of production, a party must produce it *either* (1) in the form or forms in which it is ordinarily maintained, *or* (2) in a reasonably usable form or forms. Fed. R. Civ. P. 34(b)(2)(E)(ii). The parties agree that Mr. Drenberg's document requests did not specify a form of

production for ESI. Mr. Song had the option of producing responsive ESI in the form in which it was ordinarily maintained or in a reasonably usable form. He did neither. The Court does not credit Mr. Song's assertion that he maintains all responsive documents in a jumbled order in two 100+ page, undifferentiated PDFs "in the ordinary course of business." This assertion is particularly suspect where the record before the Court reflects that the PDFs contain documents from different sources and different document formats (such as text messages and emails). The parties agree that Mr. Drenberg's counsel eventually asked Mr. Song to produce his documents as PDF files, and the Court does not fault Mr. Song for converting responsive ESI to PDF format at Mr. Drenberg's request. However, it is inconceivable that experienced counsel would expect that combining multiple ESI documents into two massive PDFs without Bates labels would qualify as producing documents in "reasonably usable form." *See Venture Corp. v. Barrett*, No. 5:13-cv-03384-PSG, 2014 WL 5305575 at *3 (N.D. Cal. Oct. 16, 2014) ("[T]here is no serious question that a grab-bag of PDF and native files is neither how the [plaintiffs] ordinarily maintained the documents and ESI nor is 'in a reasonably usable form.'"). For these reasons, the Court concludes that Mr. Song's document production does not comply with Rule 34.

In fashioning a remedy here, the Court notes that the parties' mutual failure to discuss and stipulate to, or seek a Court order regarding, procedures for handling ESI at the beginning of this litigation contributed to the circumstances in which they now find themselves. Dkt. No. 35 at 4 (ordering parties to discuss a discovery plan concerning topics described in Rule 26(f)(3)(C) and (D)). Rule 26(f) requires the parties to confer at least 21 days before the initial case management conference about a discovery plan. Fed. R. Civ. P. 26(f)(1), (2). The discovery plan, which the parties must submit to the Court within 14 days of the parties' conference, must include the parties' views and proposals on "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced." Fed. R. Civ. P. 26(f)(3)(C). The parties did not comply with these requirements. In their respective January 2019 case management statements, they advised the Court they were "familiar with" the Court's Guidelines on ESI, but had not yet held their Rule 26(f) conference. Dkt. No. 12 at 3; Dkt. No. 14 at 3–4. As recently as August 6, 2019, the parties advised the Court that they

had not yet reached agreement on a stipulation to govern the production of ESI. Dkt. No. 60 at 6. Nevertheless, this mutual failure does not excuse Mr. Song from his obligation to produce documents in a manner that complies with Rule 34(b)(2)(E)(ii).

By **November 1, 2019**, Mr. Song must organize and label his document production to correspond to the document requests to which the documents are responsive. If a document is responsive to more than one request, he shall so indicate. The documents must be produced as PDF files so that it is possible to discern where each discrete document begins and ends.[3] Every page of every document must be given a unique identifier (e.g., a Bates label), unless the parties stipulate otherwise as may be necessary for Excel spreadsheets or other files that might be produced best in native format. Mr. Song need not eliminate duplicates from his production. By **October 18, 2019**, the parties shall confer regarding whether any allegedly unreadable screenshots may be produced in a different format or made available for inspection so that Mr. Drenberg has access to screenshots of the same quality as the screenshots in Mr. Song's possession. Mr. Song need not create new screenshots.

## II. MR. DRENBERG'S SECOND SET OF DOCUMENT REQUESTS TO MR. SONG

The parties' disputes regarding Mr. Song's responses to Mr. Drenberg's second set of document requests are nearly identical to the disputes the Court has addressed above with respect to Mr. Drenberg's first set of document requests. Mr. Drenberg challenges both Mr. Song's written responses to Mr. Drenberg's document requests and Mr. Song's production of documents called for by those requests on the same grounds. Mr. Song defends against those challenges on the same grounds. *See* Dkt. Nos. 66, 69.

The principal difference is that Mr. Song's responses to the second set of document requests were not the subject of prior Court orders. However, this difference is immaterial for purposes of the Court's resolution of the parties' disputes here. Mr. Song's failure to comply with his discovery obligations with respect to the second set of document requests is not excused

---

[3] For example, Mr. Song may produce each document as a separate PDF file, or he may delimit each discrete document within a larger PDF file by using the bookmarks function in Adobe Acrobat, or any other similar function in a PDF-editing software program of Mr. Song's choice.

10

merely because those particular requests were not the subject of this Court's prior orders. In fact, based on those prior orders, Mr. Song should have known better than to repeat the same errors.

Accordingly, the Court resolves the parties' disputes with respect to the second set of document requests as follows:

By **October 21, 2019**, Mr. Song must serve amended responses that are either unqualified or explain the scope of the production he agrees to make with respect to each document request. If he has withheld from production any responsive documents on the ground that the documents are privileged, he must produce those documents by **October 21, 2019**. Mr. Song has not provided a privilege log with respect to documents responsive to Mr. Drenberg's second set of document requests, and has therefore waived any privilege or protection as to those documents.

Mr. Song need not identify responsive documents of which he is aware if those documents are not in his possession, custody, or control.

By **November 1, 2019,** Mr. Song must organize and label his document production to correspond to the document requests to which the documents are responsive. If a document is responsive to more than one request, he shall so indicate. The documents must be produced as PDF files so that it is possible to discern where each discrete document begins and ends. Every page of every document must be given a unique identifier (e.g., a Bates label), unless the parties stipulate otherwise as may be necessary for Excel spreadsheets or other files that might be produced best in native format. Mr. Song need not eliminate duplicates from his production. By **October 18, 2019**, the parties shall confer regarding whether any allegedly unreadable screenshots may be produced in a different format or made available for inspection so that Mr. Drenberg has access to screenshots of the same quality as the screenshots in Mr. Song's possession. Mr. Song need not create new screenshots.

## III. CONCLUSION

The Court grants in part and denies in part Mr. Drenberg's motion to compel. Mr. Song must amend his written responses to Mr. Drenberg's first and second sets of documents requests, and must produce documents responsive to the first and second sets of document requests, as specifically set forth above.

11

In addition, Adam Engel, counsel of record for Mr. Song, has responded to document discovery in this case in a manner that suggests he is not well-informed about his and his client's discovery obligations. Moreover, it does not appear that Mr. Engel has undertaken the steps required of counsel to investigate the existence and location of documents responsive to Mr. Drenberg's document requests. *See Abadia-Peixoto v. U.S. Dep't of Homeland Security*, No. CV 11-04001 RS (KAW), 2013 WL 4511925, at *2 (N.D. Cal. Aug. 23, 2013) ("In the era of e-discovery, attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search.") (internal quotation marks omitted); Cutting to the "Document Review" Chase: Managing a Document Review in Litigation and Investigations, American Bar Association (June 29, 2017), https://www.americanbar.org/groups/business_law/publications/blt/2008/11/08_prasad/ (commenting that counsel must take reasonable steps to ensure that document productions are accurate and complete by, among other things, developing a well-thought-out plan for collecting, reviewing, and producing all potentially responsive information). To address this problem, the Court orders Mr. Engel to read Title V of the Federal Rules of Civil Procedure ("Disclosures and Discovery"), including the Advisory Committee Notes that correspond to the current rules, and Civil Local Rules 26-37. The Court further orders Mr. Engel personally to investigate the existence and location of documents responsive to each of Mr. Drenberg's document requests. No later than **October 21, 2019**, Mr. Engel shall file a declaration with Court attesting, under penalty of perjury, that he has complied with the foregoing directives.

**IT IS SO ORDERED.**

Dated: October 11, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge